FOR PUBLICATION                                                                    CLOSE

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NEWARK CAB ASSOCIATION, NEWARK TAXI OWNER ASSOCIATION, TETERBORO AIRPORT LIMOSUINE SERVICE, ABBAS ABBAS, PETRO ABDELMESSIEH, SAYEV KHELLAH, MICHAEL W. SAMUEL, and GEORGE TAWFIK, individually and by certain plaintiffs on behalf of others similarly situated,<br><br>                   Plaintiffs,<br><br>      v.<br><br>CITY OF NEWARK,<br><br>                Defendant. | : : : : : : : : : : : : : : | **AMENDED OPINION**<br><br>Civ. No. 16-4681 (WHW)(CLW) |

__Walls, Senior District Judge__

Defendant City of Newark moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the seven count Complaint filed by Plaintiffs Newark Cab Association et al., ("Plaintiffs"). ECF No. 8. Plaintiffs filed their opposition to Defendant's motion on November 7, 2011. ECF No. 11. The motion being fully briefed and ripe for adjudication, is decided without oral argument under Federal Rule of Civil Procedure 78. Defendant's motion is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Newark Cab Association, Newark Taxi Owner Association, Teterboro Airport Limousine Service, Abbas Abbas, Petro Abdelmessieh, Sayev Khellah, Michael W. Samuel, and George Tawfik, are entities and individuals engaged in the licensed taxi and limousine industry in Newark, New Jersey (collectively "Plaintiffs"). Compl., ECF No. 1 ¶ 1. They have brought this case, individually and on behalf of others similarly situated, against the City of Newark (the

"City") based on allegations that the City "has arbitrarily violated their constitutional rights by applying burdensome and costly taxi and limousine regulations ("Taxi Regulations") to them, but not to *de facto* taxi companies such as Uber (also knowing as Transportation Network Companies or "TNCs"). *Id.* ¶ 2. The Complaint asserts seven counts against the City of Newark for violations of the Constitution of the United States of America and New Jersey state law. *Id.* ¶¶ 103–160.

For the purposes of this opinion, the Court assumes the truth of the following allegations in the Complaint: For decades, the City of Newark has regulated all For-Hire Transportation providers under uniform rules[1] (the Taxi Regulations) set forth in the City's municipal code. *Id.* ¶ 4; *see also* Newark, N.J., Code §34:1-1-1-63. The purpose of these rules is to protect the public, regulate traffic, address transportation congestion, and provide a public service. ECF No. 1 ¶ 4. The Regulations require taxi and limousine drivers to meet certain job qualifications, *id.* ¶¶ 4(a), 81, pass a background check—including drug testing for limousine drivers—conducted by the Newark Police Department, *id.* ¶¶ 4(a), 82, pay application fees, *id.* ¶ 4(a), and obtain special commercial licenses, *id.* ¶¶ 4(a), 81. Additionally, taxi and limousine vehicles must be serviced and inspected every six months by the Division of Taxicabs, *id.* ¶¶ 4(b), 88, taxi fares must be measured and imposed by meters in accordance with City-mandated rates, *id.* ¶¶ 4(c), 94, and all taxi and limousine operators must carry primary commercial liability insurance, *id.* ¶¶ 4(d). Taxi drivers are likewise prohibited from working at Newark airport until one year after the issuance

---

[1] Chapter One of Title 34 of the Municipal Code for the City of Newark regulates taxicabs and Chapter Two of Title 34 regulates autocabs, limousines, and livery services. While Chapters One and Two are not coextensive, they will be collectively referred to as the "Regulations" or the "Taxi Regulations" as this lawsuit focuses on the City regulations applicable to all for-hire transportation providers. ECF No. 1 ¶¶ 68–98. Differences will be specifically noted where necessary.

of their taxi driver's license and the number of medallions is capped by the City at six hundred (600). *Id.* ¶¶ 92–93.[2]

The Complaint alleges that the "burdens and expenses" inherent in the Taxi Regulations were part of a "*quid pro quo*" between taxi and limousine drivers and the City for exclusive rights[3] to engage in the business of For-Hire Transportation. *Id.* ¶ 5. Plaintiffs claim that in reliance on the promise of exclusivity, "taxis, limousines, and related businesses have invested hundreds of millions of dollars." Plaintiffs now contend that they are losing these investments due to the City's arbitrary and unequal treatment of TNC's such as Uber—a ridesharing service that allows customers to summon and pay for for-hire transportation via smartphone app— "which do[] exactly the same thing that traditional taxi companies do." *Id.* ¶ 7.

According to Plaintiffs, before Uber's arrival in Newark in 2013, the City was "committed to the fair regulation of the entire for-hire vehicle industry." *Id.* ¶ 18. But in 2013, *de facto* taxi companies, including Uber, "began to offer taxi and limousine services in Newark in open and blatant disregard of applicable City Taxi and Limousine Regulations, including the law requiring taxi medallion ownership." *Id.* ¶ 21. Plaintiffs allege that the City deliberately "turned a blind eye" to the failure of TNC's to comply with Newark regulations "[d]espite the fact that

---

[2] A fuller list of the requirements for traditional taxi and limousine providers, which Plaintiffs contend are not required of *de facto* taxi companies, can be found at ECF No. 1 at 6.

[3] Plaintiffs cite the following ordinance provisions regarding the "exclusive right" of the owners of medallions to operate taxis:

    (a) No person shall operate or permit a taxicab owned or controlled by him/her to operate as a taxicab upon the streets of the City of Newark without first having obtained a taxicab license renewal from the Manager, after review by the Taxicab Commission.

    (b) It shall be unlawful or a violation of this chapter for taxicabs licensed in other municipalities or state to receive passengers in the City of Newark and regularly discharging passengers originating in other municipalities or states in the City of Newark without obtaining a license from the Manager, Division of Taxicabs. (R.O. 1966 C.S. § 24:1-3; Ord. 6 S+FA, 5-1-91).

Newark, N.J. Code § 34:1-3.

there is no meaningful difference between licensed taxi and limousine businesses and the businesses of the de facto taxi companies . . . ." *Id.* ¶¶ 22–23.

Between approximately 2013 and May 10, 2016, the City, through its officials, expressed competing views regarding the need for Uber and other *de facto* taxi companies to comply with Taxi Regulations. *Id.* ¶¶ 50–55, Ex. B. During this time period, *de facto* taxi companies were not required to meet the Taxi Regulations while Plaintiffs were. *Id.* ¶ 110. In April 2016, Newark Mayor Ras Baraka announced that an agreement had been reached between Uber and the City, which would solve the *de facto* taxi problem and "protect the business interests of the taxi and limousine industry." *Id.* ¶ 55. Under the Uber-Newark Agreement (the "Agreement"), Uber agreed to pay the City $1 million a year for ten years in exchange for permission to operate in Newark. *Id.*; *see also id.*, Ex. A. In addition, Uber agreed to a modified regulatory regime: It would provide $1.5 million in liability insurance for all drivers; have a nationally-accredited third party provider conduct background checks on all of its drivers, and enforce a zero-tolerance drug and alcohol abuse policy. *Id.* ¶ 55; *see also id.*, Ex. A at 3–5. Most of the agreed-upon regulatory provisions do not meet the requirements of the City's Taxi Regulations. *See, e.g.*, *id.* ¶¶ 1–2, 6, 8, 56, 66–98.

Plaintiffs now claim that the City's failure to impose the Taxi Regulations on TNCs, since the arrival of Uber in 2013 through the present, "has created a severe economic disadvantage for the taxi industry and [given] Uber a strong, competitive advantage in Newark." *Id.* ¶ 27. The Complaint alleges that medallion holders like the individual plaintiffs have seen an over 50% drop in the market value of their taxi medallions during this time. *Id.* Plaintiffs assert that the City is liable for this serious reduction in medallion value because (1) in New Jersey, taxi medallions constitute property, and (2) Newark's "issuance of medallions" and taxi and

4

limousine regulatory scheme "constitute a contract between the City and medallion owners." *Id.*
¶ 30. Plaintiffs contend that Newark's violation of these property and contract rights give rise to
federal and state law claims. *Id.*

On August 2, 2016, Plaintiffs filed their seven-count class-action Complaint in the
District of New Jersey. *Id.* The Complaint brings class allegations on behalf of two classes. The
Medallion Class is defined to include "all individuals or entities that owned a City of Newark
taxicab medallion at any time between January 1, 2013, to the present." *Id.* ¶ 100. The Limousine
Class includes "all individuals and entities that held a limousine license pursuant to Title 34
Chapter 2 of the Revised General Ordinances of the City of Newark at any time between January
1, 2013 to the present." *Id.* ¶ 129. All counts are brought on behalf of the Medallion Class. *Id.* ¶¶
103–60. Counts Two and Three are also brought on behalf of the Limousine Class. *Id.* ¶¶ 109–
28.

Count One charges the City with violations of the Takings Clause of the Fifth
Amendment to the United States Constitution, as incorporated to the states under the Due
Process Clause of the Fourteenth Amendment, based on the City's taking of exclusive property
and contract rights from the Medallion Class through the Newark-Uber Agreement, which allows
*de facto* taxi companies to operate without possessing medallions or meeting Taxi and
Limousine Regulations. *Id.* ¶¶ 103–08. Count Two charges the City with violating the Equal
Protection Clause of the Fourteenth Amendment, during the time period before the enactment of
the Newark-Uber Agreement, through its intentional, irrational and unequal application of the
City Taxi Regulations to *de facto* taxi companies. *Id.* ¶¶ 109–15. Count Three charges the City
with violating the Equal Protection Clause of the Fourteenth Amendment, during the time period
after the enactment of the Newark-Uber Agreement, through the City's irrational decision to

submit TNC's and Plaintiffs to unequal regulatory schemes. *Id.* ¶¶ 116–28. Count Four charges

the City with violating the Substantive Due Process Rights of the Transportation Plaintiffs and

the Medallion Class by arbitrarily and capriciously choosing to apply the City Taxi Regulations

to them and not the *de facto* taxi companies, which deprived them "of their property interests in

their medallions and in the businesses they operate based upon the City Taxi Regulations." *Id.* ¶¶

134–139. Count Five seeks judgment against the City for breach of contract in violation of New

Jersey law based on the relationship allegedly created by the Taxi Regulations between the taxi

operators and the City. *Id.* ¶¶ 140–48. Count Six is an alternative claim to the breach of contract

claim. It seeks judgment against the City on a theory of promissory estoppel based on the

promises allegedly embedded in the Taxi Regulations. *Id.* ¶¶ 149–55. Finally, Count Seven

alleges that the City is estopped from "enabling and condoning a system of *de facto* taxi

operation" due to its past enforcement of the Taxi Regulations and its decades-long sale of

medallions. *Id.* ¶¶ 156–60.

      The City of Newark filed a motion to dismiss Plaintiff's Complaint on October 17, 2016.

ECF No. 8. The City argues that Plaintiffs' federal claims fail because Plaintiffs "cannot

establish any property right that has been violated, and cannot establish that they are similarly

situated to Uber or any other TNC." *Id.* at 1–2. Defendant also argue that Plaintiffs' state law

claims fail because: (1) Plaintiffs cannot show the existence of a valid contract between them and

the City, *id.* at 8–9; (2) Plaintiffs cannot establish a "clear and definite promise" between them

and the City, *id.* at 9; and (3) Plaintiffs cannot show detrimental reliance in order to state a claim

for equitable estoppel, *id.* at 10. Plaintiffs filed an opposition to Defendant's motion on

November 7, 2016. ECF No. 11. Plaintiffs argue that their federal claims survive because (1)

Defendant has taken Plaintiffs' property, in the form of their taxi medallions and licenses,

FOR PUBLICATION                                                      CLOSE

without just compensation, *id.* at 11–16; and (2) the City has and continues to arbitrarily "treat

the class of Transportation Plaintiffs differently from others similarly situated," *id.* at 4–11.

Plaintiffs further argue that the Newark Municipal Code regulating transportation amounts to

contract and a promise, which the city has breached through its treatment of TNC's. *Id.* at 17–23.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal where the non-moving

party fails to state a claim upon which relief can be granted. Under Federal Rule of Civil

Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice

if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation

marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'shown'—that the pleader is entitled to relief." *Id.* at 679.

If a complaint fails to state a claim upon which relief can be granted, a plaintiff should

ordinarily be granted the right to amend its complaint. *Foman v. Davis*, 371 U.S. 178, 182

(1962). In the Third Circuit, plaintiffs whose complaints fail to state a cause of action are entitled

to amend their complaint unless doing so would be inequitable or futile. *Fletcher-Harlee Corp.*

FOR PUBLICATION                                                                      CLOSE

*v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

## DISCUSSION

**I.     Counts One and Four: Property Interest**

Count One of the Complaint alleges that the City has taken the Medallion Owner

Plaintiffs' and the Medallion Class' property without just compensation in violation of the

Takings Clause of the Fifth Amendment to the United States Constitution as applied to the states

under the Due Process Clause of the Fourteenth Amendment. ECF No. 1 ¶¶ 103–08. Count Four

alleges that the City violated the substantive due process rights of the Transportation Plaintiffs

and the Medallion Class. *Id.* ¶¶ 134–39. The City moves to dismiss these counts based on the

lack of property interest at stake. These claims are analyzed together as they both depend on the

existence of a property interest.

The U.S. Constitution prohibits private property from being "taken" for public use

without the payment of just compensation. U.S. Const., amend. V. It is well established that just

as physical takings of property require just compensation, so do certain government regulations

of property. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). Similarly, a substantive

due process claim focuses on whether "a property interest that falls within the ambit of

substantive due process" was "taken away by the state for reasons that are arbitrary, irrational, or

tainted by improper motive or by government conduct so egregious that it shocks the

conscience." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (internal quotation

marks and citations omitted).

As recognized, both of these claims depend on the existence of a property interest.

Because Plaintiffs cannot establish a protected property interest, their claims fail and must be

dismissed.  Plaintiffs claim that the "value of both the medallions as well as the ability to operate

FOR PUBLICATION                                                    CLOSE

exclusively within [Newark]" is the property interest that has been taken. ECF No 11 at 12. In

support, they advance New Jersey case law that there "exists a property interest in [] taxicab

licenses." *Id.* (citing *Mohamed-Ali v. City of Newark*, No. A-4035-11T4, 2013 WL 4859783, at

*3 (N.J. Super. Ct. App. Div. Sept. 13, 2013) ("[P]laintiff had a property interest in his taxicab

license and was entitled to due process in his license suspension."). What Plaintiffs fail to

appreciate is that there is a meaningful distinction between a case like *Mohamed-Ali*, where the

City actually suspended a cab license without proper process, and this case, where Plaintiffs

retain their medallions and taxi licenses albeit at a lesser value given the increased competition.

   The difference is crucial. "Property does not include a right to be free from competition."

*Ill. Transp. Trade Ass'n v. City of Chicago*, 839 F.3d 594, 596 (7th Cir. 2016). As several courts

have now made clear in this exact context, it follows that "any property interest that the taxicab

license holders' may possess does not extend to the market value of the taxicab licenses derived

through the closed nature or the City's taxicab market." *Minneapolis Taxi Owners Coal., Inc. v.

City of Minneapolis*, 572 F.3d 502, 509 (8th Cir. 2009); *see also Ill. Transp. Trade Ass'n*, 839

F.3d at 594; *Boston Taxi Owners Ass'n, Inc. v. City of Boston*, 180 F. Supp. 3d 108, 117 (D.

Mass. 2016) ("But the owner of a medallion does not possess a property interest in the

transportation-for-hire market itself."). This Court agrees with the reasoning of these cases.

Plaintiffs have cited no judicial determinations anywhere that a public government, such as

Newark, has given taxi medallion holders a right to exclude or inhibit competitive providers of

transportation. Because Plaintiffs remain in possession of the medallions and there is no property

interest in their market value, Plaintiffs' Taking Clause and substantive due process claims fail.

FOR PUBLICATION                                                                    CLOSE

## II.   Counts Two and Three: Equal Protection

Counts Two and Three allege that the City of Newark violated the Equal Protection
Clause of the Fourteenth Amendment both during the time period before the enactment of the
Newark-Uber Agreement, through its intentional, irrational and unequal application of the City
Taxi and Limousine Regulations to *de facto* taxi companies, ECF No. 1 ¶¶ 109–15, and after the
enactment of the Newark-Uber Agreement, through the City's irrational decision to apply
"unequal levels of regulation" to TNC's and the Transportation Plaintiffs, *id.* ¶¶ 116–28. The
City moves to dismiss these claims, arguing that Plaintiffs are not similarly situated to TNCs and
that the City has established a reasonable basis for any differential treatment. ECF No. 8-1 at 8.

A state may not "deny to any person within its jurisdiction the equal protection of the
laws." U.S. Const. amend. XIV. The U.S. Supreme Court has stated that the purpose of this
clause is "to secure every person within the State's jurisdiction against intentional and arbitrary
discrimination, whether occasioned by express terms of a statute or by its improper execution
through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)
(internal citations and quotation marks omitted). Absent allegations that a plaintiff is a member
of a protected class, "[t]he general rule is that legislation is presumed to be valid and will be
sustained if the classification drawn by the statute is rationally related to a legitimate state
interest." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). "Under rational basis
review, a classification must be upheld against equal protection challenge if there is any
reasonably conceivable state of facts that could provide a rational basis for the classification."

*United States v. Walker*, 473 F.3d 71, 77 (3d Cir.2007) (internal quotation marks omitted)

(quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993).

Plaintiffs do not allege membership in a protected class. ECF No. 11 at 4. The question

before the Court is simply whether the City, by failing to place as many regulatory burdens on

TNCs as on Plaintiffs, denied the latter equal protection of the law. The answer to this question

depends on whether the regulatory differences between Newark taxicabs and Newark TNCs are

arbitrary or defensible under a rational basis standard. *See Ill. Transp. Trade Ass'n*, 839 F.3d at

598. Because the City makes a persuasive case that there is a rational basis for the regulatory

differences, Plaintiffs' equal protection claims fail.

The City argues that TNCs are not similarly situated to taxis for three primary reasons:

"(1) TNCs cannot be hailed on the street, (2) there is a pre-existing contractual relationship

between the TNC and the consumer, and (3) fares are not set by the City." ECF No. 8-1 at 6. The

City contends that these differences are enough to justify different regulatory schemes. *Id.* at 6–

8. Plaintiffs respond by highlighting the myriad differences between the City's regulatory

schemes for taxicabs and TNCs. ECF No. 11 at 4–11. But ultimately, Plaintiffs argument rests on

the proposition that any providers of for-hire transportation services must be subject to the same

regulations or else the city commits an equal protection violation. *Id.* at 11. This is not the case.

The City has shown sufficient differences between taxi companies and TNCs to justify

different regulatory schemes. *See Ill. Transp. Trade Ass'n*, 839 F.3d at 598. As example, taxis

but not TNCs, may pick up passengers who hail them directly on the street. ECF No. 8-1 at 7.

Because people who hail taxis seldom have a previous relationship with the taxi driver they are

flagging down, it makes sense for the City to try to protect passengers by requiring minimum

qualifications, ensuring standard rates, and requiring taxis to meet certain insurance standards.

*Id.*; *see Illinois Trade Ass'n*, 839 F.3d at 598. By contrast, passengers cannot hail TNC drivers on the street. Instead, TNC passengers establish a contractual relationship with the TNC itself prior to requesting transportation. ECF No. 8-1 at 7–8. This contractual relationship specifies terms such as the driver qualifications, fares, and insurance, which must be accepted by the user in order to request transportation. *Id.* Additionally, passengers request transportation with TNCs like Uber through smartphone apps, which give passengers extensive information about their prospective driver—name, license plate number, car make and model, user rating, and even estimated fare—before the driver even arrives to pick them up. *Id.* These important differences between TNCs and taxicabs justify the City of Newark's application of different regulatory schemes to taxi and TNC services, thereby dissolving Plaintiffs' equal protection claim.

**III.    Counts Five, Six, and Seven: New Jersey State Law Claims.**

Plaintiffs bring three pendant state law claims: Count Five for breach of contract; Count Six for promissory estoppel; and Count VII for equitable estoppel.

   A.    Count Five: Breach of Contract

Under New Jersey law, a breach of contract requires (1) the existence of a contract, (2) breach, (3) damages, and (4) that the claimant performed her own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The City moves to dismiss Plaintiffs' contract claim for failure to establish that it owes any contractual obligation to Plaintiffs. ECF No 8-1 at 8–9. Plaintiffs respond that the relevant contractual obligations arise from the City Taxi Regulations, which make it unlawful to operate a taxi cab without a license, cap the number of taxi medallions, and limit the sale and transfer of medallions. ECF No. 11 at 17–18 (citing Newark, N.J. Code §§ 34:1-3, 1-7, 1-21). To Plaintiffs, these "and other enforcement provisions constitute a part of the promise by the City to medallion purchasers and

FOR PUBLICATION                                                    CLOSE

lenders that the City will support the exclusivity and market value provisions by removing

unlawful taxicabs from the streets and fining violators heavily." *Id.* at 18. This argument is

flawed.

"[A] statute may be construed as creating a contract when the Legislature's intent to

create a contractual commitment is so plainly expressed that one cannot doubt the individual

legislator understood and intended it." *Burgos v. State*, 222 N.J. 175, 195 (2015), *cert. denied*,

136 S. Ct. 1156 (2016). In *New Jersey Education Association v. State (NJEA)*, 412 N.J. Super.

192 (App. Div. 2010), the Appellate Division recognized that a clear indication that the

legislature intended to bind itself is necessary if a statute is to be regarded as having created

contractual rights "because the effect of such authorization is to surrender the fundamental

legislative prerogative of statutory revision and amendment and to restrict the legislative

authority of succeeding legislatures." *Id.* at 206–07. "[T]he presumption is that a law is not

intended to create private contractual or vested rights . . . until the legislature shall ordain

otherwise." *Id.* at 207. And so, the *Burgos* Court found a private contractual right created by a

New Jersey statute when the statue "expressly reference[d] a 'contractual right,' *Burgos*, 222

N.J. at 195, and the *NJEA* Court found no private contractual right when a New Jersey statue

simply stated that the legislature "shall" carry out a task, *NJEA*, 412 N.J. Super. At 199.

Here Plaintiffs point to no language in Title 34 of the Newark Municipal Code, which

expresses a clear indication by the legislature to create a contractual commitment. Additionally,

they refer to no case law to support their contention that Title 34 creates a contractual right.

FOR PUBLICATION                                                                    CLOSE

Because Plaintiffs cannot establish a contractual obligation between them and the City, their

breach of contract claim fails.

> B. <u>Count Six and Seven: Promissory and Equitable Estoppel</u>

Count Six advances an alternative theory to Count Five through the argument that the

doctrine of promissory estoppel allows the Court to enforce a promise made by the City to

Plaintiffs in the absence of an express contract between them and the City of Newark. ECF No.

11 at 20. Count Seven alleges that the City is estopped from creating an alternative regulatory

structure for TNCs. *Id.* at 22. These claims fail because Plaintiffs do not establish that the City

induced reasonable detrimental reliance through promises or conduct.

The elements of promissory estoppel are: "1) a clear and definite promise, 2) made with

the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4)

which results in definite and substantial detriment." *E. Orange Bd. of Educ. v. N.J. Sch. Const.*

*Corp.*, 405 N.J. Super. 132, 148 (App. Div. 2009). The essential justification for the promissory

estoppel doctrine is to avoid the substantial hardship or injustice which would result if such a

promise were not enforced. *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 307 N.J. Super. 461,

469 (App. Div. 1998).

Similarly, equitable estoppel "is invoked in the interests of justice, morality and common

fairness." *Knorr v. Smeal*, 178 N.J. 169, 178 (2003) (quoting *Palatine I v. Planning Bd.*, 133 N.J.

546, 560 (1993)) (internal quotation marks omitted). "[T]o establish equitable estoppel, plaintiffs

must show that defendant engaged in conduct, either intentionally or under circumstances that

induced reliance, and that plaintiffs acted or changed their position to their detriment. *Id.* (citing

*Miller v. Miller*, 97 N.J. 154, 163 (1984)). "Equitable estoppel is 'rarely invoked against a

governmental entity,'" *Middletown Twp. Policemen's Benev. Ass'n Local No. 124 v. Twp. of*

*Middletown*, 162 N.J. 361, 367, 744 A.2d 649, 652 (2000) (quoting *Wood v. Borough of Wildwood Crest,* 319 *N.J.Super.* 650, 656 (App.Div.1999)), and it will not be applied against public bodies if it would "prejudice essential governmental functions." *Id.*

Plaintiffs say that the City Taxi Regulations constitute a "promise to license holders that, subject to compliance with the obligations of the city taxi requirements, the City will provide certain rights," including exclusivity, market support, and enforcement of the regulations. ECF No. 11 at 21. Defendants answer that Plaintiffs "cannot establish a clear and definite promise from the City" and show detrimental reliance. ECF No 8-1 at 9. The Court agrees with Defendants. A plain reading of the regulations does not support Plaintiffs' contention that the City promised insulation from competition, perpetual exclusivity in the for-hire transportation market, and enforcement of the Taxi Regulations to new business models, such as Uber.

Plaintiffs failure to identify a promise or other conduct by the City that would reasonably induce reliance dooms their equitable estoppel claim as well. As example, the Complaint does not allege that the City of Newark assured Plaintiffs a certain market value for their taxicab medallions, which it no longer guarantees. Instead, Plaintiffs' claim is based on their expectation that the City would impose certain regulations on new businesses. This case is not like other New Jersey cases where equitable estoppel has been applied to public bodies. *See, e.g., Middletown Twp. Policemen's Benev. Ass'n*, 162 N.J. at 373 (holding that the Township of Middletown was equitably estopped from terminating an individual's retirement benefits when he retired early in reliance of a promise of said benefits and the township had been paying them for ten years); *Mott v. Zoning Bd. of Adjustment of City of Ocean City*, No. A-1584-08T1, 2009 WL 3460397, at *3 (N.J. Super. Ct. App. Div. Oct. 16, 2009) (finding that equitable estoppel precluded a city from rescinding previously issued building and zoning permits when the

FOR PUBLICATION                                                                      CLOSE

property owner expended substantial amounts of money improving the property in reliance on

the permits). Plaintiffs' claims are dismissed.

## CONCLUSION

Defendant's motion to dismiss is granted. Plaintiffs' claims are dismissed with prejudice.

An appropriate order follows.


DATE: 25 January 2017

William H. Walls
Senior United States District Court Judge

16